**Beryl N. JONES et al., United States of America, Appellants,**

**v.**

**CADDO PARISH SCHOOL BOARD et al., Appellees.**

**Linda WILLIAMS et al., Appellants,**

**v.**

**George KIMBROUGH et al., Appellees.**

**Virgie Lee VALLEY et al., Appellants,**

**v.**

**RAPIDES PARISH SCHOOL BOARD et al., Appellees.**

**Joan GRAHAM et al., Appellants,**

**v.**

**EVANGELINE PARISH SCHOOL BOARD et al., Appellees.**

**No. 25934.**

United States Court of Appeals Fifth Circuit.

March 27, 1968.

Jack Greenberg, Franklin E. White, William Bennett Turner, New York City, A. P. Tureaud, New Orleans, La., Louis Berry, Alexandria, La., Murphy Bell, Baton Rouge, La., Stephen Pollack, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., for appellant.

Jack P. F. Gremillion, Atty. Gen., Baton Rouge, La., Thompson L. Carke, Dist. Atty., St. Joseph, La., John D. Richardson, Dist. Atty., Baton Rouge, La., Edwin O. Ware, Dist. Atty., Alexandria, La., L. O. Fusilier, Dist. Atty., Ville Platte, La., Harry Kron, Thibodeaux, La., for appellee.

Before TUTTLE, BELL and SIMPSON, Circuit Judges.

PER CURIAM.

It is ordered that the motion filed by appellants for consolidation of the above referenced causes for purposes of appeal is hereby granted.

These are appeals from four orders by three district judges in four separate

parish school district integration cases in the Western District of Louisiana.

Notice of appeal having been filed, the appellants have filed their motions for summary reversal of the orders of the respective trial courts, each of which denied the appellants' motion for specific and immediate additional steps by way of faculty integration of the schools involved.

In the Rapides and Evangeline Parish cases, orders were entered denying the relief sought. In the Caddo and Madison Parish cases, the trial court postponed action until after commencement of the fall term, 1968–69.

It is simply not practicable for this court, on motion for a summary reversal, without briefing and without argument, to resolve the factual issues presented on these records. The appellants assert, and this is not denied, that all efforts thus far sought to be made to implement Section VII(a) (c) of this court's Jefferson type decree, promulgated by the district court for the Western District of Louisiana[1] have been by seeking to have teachers volunteer to take assignments across racial lines, that is, to schools, the majority of whose pupils are of a different race.

The trial judges in the cases in which opinions were written, as well as the other trial judge, as expressed in the

language used by him during the hearings, in effect, found that the effort to obtain voluntary transfers was all that has been "possible" within the context of local circumstances through the end of this current school year. However, both district judges who wrote opinions recognized that hereafter this would not be enough, if it did not produce meaningful faculty integration. In the Rapides Parish case, the court said: "Surely, whenever feasible, requests of individual staff members to transfer into minority situations should be honored, but if results are not obtained, affirmative action must be taken. The effort by way of volunteers, as a corrective process has not been adequate. It is the obligation of the Board, not the teachers, to bring about faculty integration. This Board is aware of this fact." In the Evangeline Parish case, the trial court said:

"This court is not directing or ordering the details of how these minimum requirements are to be achieved. This is up to each school board. At the beginning of this litigation, each board under consideration proposed for approval of the court a 'freedom of choice' plan for desegregation of its schools. The only way a 'freedom of choice' plan can be expected to work is on the basis of the consideration expressed in the Jefferson Coun-

---

**1.** (a) *Faculty Employment.* Race or color shall not be a factor in the hiring, assignment, reassignment, promotion, demotion, or dismissal of teachers and other professional staff members, including student teachers, except that race may be taken into account for the purpose of counteracting or correcting the effect of the segregated assignment of faculty and staff in the dual system. *Teachers, principals, and staff members shall be assigned to schools so that the faculty and staff is not composed exclusively of members of one race. Whenever possible, teachers shall be assigned so that more than one teacher of the minority race (white or Negro) shall be on a desegregated faculty. Defendants shall take positive and affirmative steps to accomplish the desegregation of their school faculties to achieve substantial*

*desegregation of the faculties in as many of the schools as possible for the 1967–68 school year* notwithstanding that teacher contracts for the 1967–68 or 1968–69 school years may have already been signed and approved. The tenure of teachers in the system shall not be used as an excuse for failure to comply with this provision. The defendants shall establish as an objective that the pattern of teacher assignment to any particular school not be identifiable as tailored for a heavy concentration of either Negro or white pupils in the school. (Emphasis added.)

(c) *Past Assignments.* The defendants shall take steps to assign and reassign teachers and other professional staff members to eliminate the effects of the dual school system.

ty case, supra, and full implementation of the decree rendered pursuant thereto. Faculty desegregation is a key requirement. Without it, some other plan must be adopted, and this plan will also necessarily require integration of faculties and administrative staff.

"The court expected that under the plan now in effect in these systems, the 1967–68 minimum requirements set out in our decree of May 1967 will be met by the end of this school year, if possible, but certainly not later than the beginning of the 1968–69 term."

The difficulty facing the appellants and the class they represent is that there is now no way in which they can ascertain to what extent the optimism expressed by the trial court in the last quotation will truly prevail until after the reports are filed following the beginning of the fall term 1968. Thereafter, if complaint is again made by the appellants the boards will naturally resist changes that are sought to be made during that school year.

Some means must be provided by the trial court to ascertain whether the requirements of Jefferson are to be substantially complied with *before* it is too late to affect teacher assignments for the next school year.

We suggest that the appellants dismiss these appeals and concentrate their efforts in working out the method of obtaining substantial compliance administratively with the appellee boards. No possible success in the appeals on the merits when this case is finally heard, if appellants should prevail, would be productive of any real benefit to the school children because time would have made the issues moot.

In denying the motion for summary reversal and for an injunction pending appeal, we direct that in each of these cases, upon motion by the appellants, an opportunity be given them to test in the trial court the degree of faculty desegregation to be in effect before the beginning of a new school year. For the purpose of such hearing, it is suggested that the present records, as supplemented as simply as possible by information furnished by respondents be utilized to the extent possible to permit prompt and inexpensive ascertainment of the true facts.

The motion for summary reversal and for injunction pending appeal is denied, subject to the provisions herein set out.